**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 24-CV-23316-MOORE/Elfenbein

**RUBICELIA TOXQUI ORTIZ**,

Plaintiff,

v.

**LESTER SALCES**, *et al.*,

Defendants.

_____/

**REPORT AND RECOMMENDATION**

**THIS CAUSE** is before the Court on Plaintiff Rubicelia Toxqui Ortiz's ("Plaintiff")

Amended Motion for Default Judgment against Defendants Lester Salces and Eleri Zetina De La

Llave (the "Amended Motion for Default Judgment"), ECF No. [28].  Defendants Lester Salces

("Salces") and Eleri Zetina de la Llave ("Zetina" and collectively "Defendants") filed their

Response in Opposition to the Amended Motion for Default Judgment (the "Response"), ECF No.

[29].  Plaintiff subsequently filed a Reply in Support of the Amended Motion for Default Judgment

(the "Reply"), ECF No. [32].  The Honorable K. Michael Moore referred the Amended Motion for

Default Judgment to me "to take all necessary and proper action as required by law."  *See* ECF

No. [30].  For the reasons explained below, I respectfully **RECOMMEND** that the Amended

Motion for Default Judgment, **ECF No. [28]**, be **GRANTED**.

**I.    BACKGROUND**

**A.  Factual Background**

In her Complaint, Plaintiff originally pursued claims under the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201, *et seq*; the Trafficking Victims Protections Act ("TVPA"), 18 U.S.C.

§§ 1590, 1589, 1592; the Florida Minimum Wage Act ("FMWA"), Fla. Stat. §§ 448.08, 448.110; and under Florida common law. *See generally* ECF No. [1]. According to the Complaint, Plaintiff became involved with Defendants when Maria Elena de la Llave de Zetina[1] ("Ms. de la Llave"), her former employer, asked her if she would be willing to travel from Mexico to work for Defendants in the United States. *See id.* at ¶¶15, 18. To secure her employment abroad, Zetina and Ms. de la Llave arranged for Plaintiff to obtain a B-1 visa, which required an employment contract. *See id.* at ¶¶20-21. Zetina provided Plaintiff an employment contract that satisfied the B-1 visa requirements, and although only Ms. de la Llave and Plaintiff signed the contract (the "Agreement"), Defendants agreed that they would employ Plaintiff and adopted its terms by arranging Plaintiff's travel to the United States, requiring her to work in their residence, and obtaining the benefits of Plaintiff's B-1 visa and employment. *See id.* at ¶¶24-34. Plaintiff worked for Defendants in their home from about October 11, 2022 to May 31, 2024. *See id.* at ¶¶36, 69. Despite adopting it, Defendants breached the Agreement and failed to pay Plaintiff the money they owed her for her services during this timeframe. *See id.* at ¶¶52, 58.

Specifically, Plaintiff alleges that Defendants and Ms. de la Llave trafficked her to the United States under false pretenses, took advantage of her by forcing labor, and paid her less than the required minimum wage for more than eighteen months. *See e.g.*, ECF No. [1] at ¶¶1-7. The Complaint asserts seven counts: violation of the TVPA § 1590 for trafficking with respect to involuntary servitude or forced labor (Count I); violation of the TVPA § 1589 for forced labor (Count II); violation of the TVPA § 1592 for unlawful conduct with respect to documents in furtherance of trafficking (Count III); violations of the FLSA's minimum wage provisions (Count

---

[1] Plaintiff filed a Notice of Voluntary Dismissal without Prejudice (the "Notice of Dismissal") with respect to Maria Elena de la Llave de Zetina. *See* ECF No. [31]. Shortly thereafter, Judge Moore entered an order dismissing the case against Ms. de la Llave without prejudice. *See* ECF No. [33].

IV); violations of the FMWA (Count V); breach of contract (Count VI); and unjust enrichment (Count VII). *See generally* ECF No. [1].

### B. Procedural History

Plaintiff filed the Complaint on August 29, 2024. *See* ECF No. [1]. She moved for a Clerk's Entry of Default approximately two months later because Defendants failed to respond to the Complaint. *See* ECF No. [14]. Subsequently, the Clerk of Court entered a default against Defendants, ECF No. [17], and Plaintiff moved for Default Judgment, ECF No. [19]. Defendants then filed a Motion to Vacate the Clerk's Default and to Quash Service (the "Motion to Vacate and Quash"). *See* ECF No. [22]. Denying the Motion to Vacate and Quash, Judge Moore found that Defendants failed to overcome Plaintiff's *prima facie* showing that service of process was sufficiently effectuated. *See id*. at 10. The Court also found that although Defendants presented adequately meritorious defenses to Counts I – III for human trafficking and Count VI for breach of contract, they did not do so for Counts IV and V for failure to pay minimum wages under the FLSA and FMWA, respectively, and Count VII for unjust enrichment. *See* ECF No. [14]. Because the Court found no good cause for Defendant's failure to respond to the Complaint and a lack of meritorious defenses as to all claims, it denied the request to vacate the entry of default, and instructed Plaintiff to file an amended motion for default judgment only as to Counts IV, V, and VII. *See id*. at 14.

Plaintiff timely filed the Amended Motion for Default Judgment, requesting the entry of final default judgment against Defendants as to only Counts IV and V.[2] *See* ECF No. [28] at 13. She argues that she has sufficiently stated a claim for relief for unpaid minimum wages under both

---

[2] Plaintiff concedes that she is not entitled to relief under Count VII for unjust enrichment "because the Court has concluded that she has stated valid claims under the FLSA and FMWA." *See* ECF No. [28] at 2. In the Reply, she reiterates that she "does not seek a Final Default Judgment on Count VII for unjust enrichment." *See* ECF No. [32] at 1, n.1.

the FLSA and FMWA because the allegations in the Complaint, which were admitted as a result of Defendants' default, establish the three required elements. *See id*. at 6-7. She seeks $40,215 in damages for the FLSA violations, or alternatively, $70,995.00 for the FMWA violations. *See id*. at 8, 11. Importantly, Plaintiff explains that "she will elect the remedy that yields the highest monetary recovery, as she is not entitled to a double recovery." *See id.* at 4. Plaintiff additionally asserts she is entitled to an equal sum in liquidated damages because Defendants willfully failed to pay her the required minimum wage under either statute, advance any defenses, or show good cause as to their failure to pay. *See id*. at 9, 11. Plaintiff also seeks attorney's fees and costs as the prevailing party under the FLSA and the FMWA and requests that Defendants be ordered to fill out a Florida Civil Procedure Form 1.977 Fact Information sheet, along with all attachments, within forty-five days of entry of an order of final default judgment. *See id*. at 12-13.

In their Response, Defendants argue that Plaintiff cannot establish a claim for unpaid minimum wages under either the FLSA or FMWA because she fails to satisfy the first two of the three required elements. *See* ECF No. [29] at 6-7. First, Defendants dispute that Plaintiff is covered under the FLSA, arguing that she was employed to provide babysitting services for Defendants' children or companionship services for Ms. de la Llave. *See id*. at 7-8. For support, they point primarily to the Agreement and the language in Plaintiff's B-1 visa, arguing that those documents contradict the Complaint's well-pled allegations. *See id*. at 8. The Court notes that Plaintiff's B-1 visa is neither attached to nor incorporated by reference to the Complaint. Defendants similarly contend that the Complaint's well-pled allegations fail to establish that they were Plaintiff's employers because the Agreement and B-1 visa contradict the Complaint's allegations. *See id*. at 9-10. They further argue that Plaintiff's allegations are conclusory, the question of whether Defendants are her employers is a legal determination, and there are no

4

allegations that Defendant Salces was Plaintiff's employer. *See id*. at 9-11.[3]  Defendants do not contest that Plaintiff satisfies the third element for unpaid wages under both the FLSA and FMWA.

Next, Defendants dispute that Plaintiff has established damages because her affidavit only sets out the approximate hours she worked and what Defendants allegedly paid her, but not the amount of damages (i.e. the mathematical computation). *See id*. at 17.  Further, she relies on her counsel to provide the damages numbers, which Defendants argue is insufficient, making it necessary to hold an evidentiary hearing on damages. *See id*. 17-18.  Pointing to their declarations attached to the Response for support, they also dispute that they are liable for liquidated damages because of the language in the Agreement and B-1 visa, and their alleged lack of involvement in paying Plaintiff. *See id*. at 18.  Defendants further contest the amount of damages Plaintiff claims, arguing that she was in Mexico and only worked during part of the damages period.  *See id*. at 19. They also contest the amount of money Plaintiff claims they paid her. *See id*.  Finally, Defendants object to the timing of the request for attorney's fees and costs as well as the amount, arguing that Plaintiff's request is premature under Local Rule 7.3 as the motion should be filed after default is entered, and the amount of fees sought is astronomically high. *See id*. at 19-20.

In her Reply, Plaintiff largely reiterates her assertions from the Amended Motion for Default Judgment. *See generally* ECF No. [32].  First, she argues the Complaint pleads sufficient facts substantiating that both Salces and Zetina were her employers. *See id*. at 3.  She also asserts that the Complaint's allegations sufficiently explain any discrepancies between the Agreement and Plaintiff's relationship with Defendants, and that this Court has already rejected Defendants'

---

[3] Defendants present arguments with respect to the unjust enrichment claim (Count VII), but, as explained above, Plaintiff is not seeking final default judgment under that count, so it need not be addressed.  *See* ECF No. [29] at 11-12.  Defendants also argue that entry of final default judgment against them will lead to inconsistent results because Ms. de la Llave has not been deemed defaulted. *See id*. at 12-16.  These arguments are now moot because the Court has dismissed Ms. de la Llave from this action without prejudice. *See* ECF No. [33].

argument that they are not her employer because they did not sign the Agreement. *See id*. at 3-4. Next, Plaintiff argues that the Complaint establishes she was a non-exempt employee under the FLSA, specifically pointing to the allegations that she performed household services for Defendants. *See id*. at 5-6. As to damages, Plaintiff contends that she provided adequate evidence through her sworn declaration and her counsel's declaration, which calculates damages based on Plaintiff's attested facts. *See id*. at 9. Moreover, Defendants have admitted to willfulness because they neither responded to the Complaint nor presented any defenses or evidence of good faith in their failure to pay minimum wages. *See id*. at 10. Finally, Plaintiff concedes that her request for a specific sum of attorney's fees and costs is premature at this juncture, but requests that the Court hold she is entitled to an award of reasonable attorney's fees and costs as the prevailing party. *See id*. at 10.

## II.    LEGAL STANDARDS

### A. Default Judgment Standard

After the clerk enters a default, the Court is authorized to enter a final default judgment if the party seeking it applies for one. *See* Fed. R. Civ. P. 55 (b)(2); *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) ("When a defendant has failed to plead or defend, a district court may enter judgment by default."). "A 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact' as set forth in the operative complaint." *TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1298 (S.D. Fla. 2016) (quoting *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009)). But the defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Surtain*, 789 F.3d at 1245 (quotation marks omitted). And a defendant's default does not automatically permit the Court to enter a default judgment: "Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in

the pleading for the judgment to be entered." *Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1259 (S.D. Fla. 2019); *see also Surtain*, 789 F.3d at 1245 ("Entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered." (internal quotations omitted)).

The Eleventh Circuit has "interpreted the standard" for evaluating whether a sufficient basis for default judgment exists "as being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245; *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). Of course, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "This plausibility standard is met 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Surtain*, 789 F.3d at 1245 (quoting *Iqbal*, 556 U.S. at 678).

## III.   DISCUSSION

### A.   Default Judgment

To recap, Plaintiff seeks entry of final default judgment only on Counts IV and V of the Complaint, which respectively allege (1) violation of the FLSA and (2) violation of the FMWA. *See* ECF No. [28] at 13; *see also* ECF No. [1] at ¶¶92-105, 106-122. Under the Eleventh Circuit's default judgment standard, the Court must confirm that the well-pleaded facts — taken as true — state plausible claims. *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1383 (11th Cir. 2024). By this standard, "the defendant cannot contest the plaintiff's factual allegations." *See id*. at 1383-84 (citing *Nishimatsu Constr. Co., v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th

Cir. 1975)).  "But the same is not true for legal arguments; those can be challenged as not offering a sufficient basis for the judgment."  *Id*. at 1383 (citing *Nishimatsu*, 515 F.2d at 1206).  Stated differently, "defendants can forfeit the ability to contest the truth of facts asserted, but a default does not give the court powers beyond those established by law."  *See id*.  Accordingly, the Court will analyze the claims through this lens.

To establish a claim for federal FLSA minimum wage or overtime pay, a plaintiff must demonstrate that: (1) defendant employed them; (2) plaintiff's work and/or defendant's enterprise engaged in interstate commerce covered by the FLSA; and (3) plaintiff worked hours for which defendant did not pay the required minimum wages and/or overtime wages to him or her.  *See* Eleventh Circuit Pattern Jury Instructions, Civil Cases 4.14 (Sept. 5, 2025); *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008) (citing 29 U.S.C. § 207(a)); *Betancourt v. Buggy Techs. Inc.*, No. 23-CV-21184, 2024 WL 4635113, at *5 (S.D. Fla. Oct. 8, 2024), *R&R adopted*, No. 23-CV-21184, 2024 WL 5038766 (S.D. Fla. Dec. 9, 2024) (quoting *Ray v. Adams & Assocs., Inc.*, 599 F. Supp. 3d 1250, 1256 (S.D. Fla. 2022)).  "[T]he requirements to state a claim of a FLSA violation are quite straightforward."  *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008).  "The elements that must be shown are simply a failure to pay overtime compensation and/or minimum wages to covered employees . . ."  *Id*. (citing 29 U.S.C. §§ 206 and 207).  "There is no need to prove intent or causation that might require more extensive pleading."  *Id*. (citing *Chao v. Rivendell Woods, Inc.,* 415 F.3d 342, 348 (4th Cir. 2005)).  Additionally, where a plaintiff's affidavit provides sufficient evidence to show the amount and extent of the work performed, and a defendant fails to oppose that information, courts have held that the affidavit is "sufficient evidence to show the amount and extent of the work [the plaintiff]

8

performed." *See Michaud v. U.S. Steakhouse Bar & Grill, Inc.*, No. 04-CV-1371-ORL-UAM, 2007 WL 2572197, at *6 (M.D. Fla. Sept. 5, 2007).

To succeed on a FMWA claim, a plaintiff must establish the same elements needed to prevail under the FLSA. *See Chavez v. Grill Enters., LLC*, No. 20-CV-22603, 2022 WL 1642757, *9 (S.D. Fla. Jan. 31, 2022); *see also Wells v. Armored Holdings, Corp.*, No. 17-CV-779-T-30AEP, 2017 WL 3088115, *1 (M.D. Fla. July 20, 2017) (explaining that the "FMWA covers only those employees entitled to receive the federal minimum wage under the FLSA" and that "[b]oth kinds of coverage require a nexus with interstate commerce."); *Chuy v. Hilton Mgmt. LLC*, No. 10-CV-178-ORL-31DAB, 2010 WL 1854120, *2 (M.D. Fla. May 10, 2010). The FMWA additionally requires that "prior to bringing any claim for unpaid minimum wages pursuant to this section, the person aggrieved shall notify the employer alleged to have violated this section, in writing, of an intent to initiate such an action." Fla. Stat. § 448.110(6)(a). This notice "must identify the minimum wage to which the person aggrieved claims entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice." *Id*. The FMWA also requires that the employer have fifteen calendar days after receiving the notice to pay the total amount of unpaid wages "or otherwise resolve the claim to the satisfaction of the person aggrieved." Fla. Stat. § 448.110(6)(b). Because the elements of a claim for unpaid wages are largely the same under the FLSA and FMWA, the Court addresses both in tandem.

As to the first element, Plaintiff sufficiently alleges an employment relationship between herself and Defendants. The FLSA definition of employer in relevant part "includes any person acting directly or indirectly in the interest of an employer in relation to an employee. . ." 29 U.S.C. § 203(d). The FMWA utilizes the same definition for employer. *See* Fla. Stat. § 448.109. To

determine whether an individual is an employee under the FLSA, courts use the economic reality test, which analyzes the economic reality of all circumstances surrounding the activity, focusing on the employee's economic dependence on the employer. *See Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013). The economic reality test considers the following factors to guide the analysis: "(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;" "(2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;" "(3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;" "(4) whether the service rendered requires a special skill;" "(5) the degree of permanency and duration of the working relationship;" and "(6) the extent to which the service rendered is an integral part of the alleged employer's business." *Id.* at 1312. "Ultimately, in considering economic dependence, the court focuses on whether an individual is 'in business for himself' or is 'dependent upon finding employment in the business of others.'" *Id.* (quoting *Mednick v. Albert Enters., Inc.,* 508 F.2d 297, 301–02 (5th Cir. 1975)).

Taking all well-pled allegations in the Complaint as true, the Court finds that Defendants indeed were Plaintiff's employer under the economic reality test. As a preliminary matter, the Court notes that Zetina, along Ms. de la Llave, arranged for Plaintiff to get a temporary B-1 visa for her domestic employment with Defendants. *See* ECF No. [1] at ¶¶20, 24. Plaintiff entered into an employment contract with Ms. de la Llave to obtain the B-1 visa. *See id*. at ¶¶21, 24. Plaintiff acknowledges that although the Agreement was written between her and Ms. de la Llave, Defendants adopted it when they agreed to employ Plaintiff, made her travel arrangements to the United States, required her to work in their home, and obtained other benefits from the B-1 visa. *See id*. at ¶¶31, 33-34. Under the Agreement, the purpose of Plaintiff's employment was to care

for Defendants' children in their home.  *See id*. at ¶33.

Turning to the factors and starting with "the nature and degree of the alleged employer's control as to the manner in which the work is to be performed," Plaintiff alleges that when she arrived in the United States, she stayed at and began working in Defendants' home where her tasks included childcare, meal preparation, house cleaning, and organization.  *See id*. at ¶¶ 38-40. Plaintiff was required to seek Defendants' permission and obtain approval before leaving the home, even when not scheduled to work.  *See id*. at ¶¶59-60.  Defendants "monitored Plaintiff constantly" and forbid her from communicating with anyone regarding salary or any work arrangements.  *See id*. at ¶60.  Indeed, after Plaintiff arrived in the United States, Zetina took her passport and "held it for almost the entire time Plaintiff worked for Defendants in the United States." *See id*. at ¶37.  Based on these admitted facts, the degree of control factor weighs in favor of finding that Defendants were Plaintiff's employer.

Looking at "the alleged employee's opportunity for profit or loss depending on his managerial skill," the Court likewise concludes this weighs in Plaintiff's favor.   The Court first notes there is no indication Plaintiff's work as a domestic services worker performing tasks of childcare, meal preparation, and cleaning the home required any managerial skills, especially not in a way that impacted her opportunity for profit and loss.  Plaintiff alleges that Defendants decided to pay her 4,500 Mexican pesos weekly rather than the amount stated in the Agreement.  *See id.* at ¶43.  This suggests that Plaintiff had no opportunity to negotiate her wage, much less an opportunity for profit or loss as a result of her managerial skills.  Further, she had no other economic opportunities for profit or loss from other potential clients as she exclusively worked for Defendants and was not allowed to leave their home without their permission, as explained above.

The Court next considers "whether the service rendered requires a special skill" and

11

concludes that Plaintiff's tasks of childcare, meal preparation, and cleaning and organizing the home, *id.* at ¶40, are tasks that do not require any specialized skill. This further lends support to Plaintiff's status as an employee.

As to "the degree of permanency and duration of the working relationship," Plaintiff worked continuously for Defendants for approximately 19 months — from October 11, 2022 to May 31, 2024. *See id.* at ¶¶99-103. This was not a sporadic relationship or one of short duration; this was a long-term employment relationship, further weighing in Plaintiff's favor. Ultimately, looking at whether Plaintiff was "in business for h[er]self" or was "dependent upon finding employment in the business of others," the Court concludes that she was economically dependent on Defendants to obtain employment, thereby establishing that, under the economic reality test, she was their employee from October 11, 2022 until May 31, 2024.

Defendants argue that the Agreement attached to the Complaint contradicts the Complaint's allegations because they were not signatories to it and the Agreement states that Plaintiff would work for Ms. de la Llave, not Defendants. The Court rejects this argument for several reasons. First, the Agreement does not contradict the well-pled allegations in the Complaint because Plaintiff alleges that Defendants subsequently *adopted* its terms. *See* ECF No. [1] at ¶¶31 and 34. Logically, Defendants' adoption of the terms of the Agreement after its execution will not appear within the document itself, so the Court sees no contradiction between the allegations and the Agreement. Moreover, as explained above and as Judge Moore already recognized, the language in the Agreement does not determine whether Defendants are Plaintiff's employer under the FLSA and FMWA. *See* ECF No. [17] at 13. Rather, the economic reality test determines whether Defendants are her employer and the Court has already answered this question in the affirmative. Finally, Defendants contend there are insufficient allegations to establish that

Salces acted as her employer; however, the Complaint contains abundant allegations substantiating that *both* Salces *and* Zetina acted as Plaintiff's employer within the meaning of the FLSA and FMWA. *See* ECF No. [1] at ¶¶31, 33-34, 36, 38, 40, 43, 57, 59, 60, 66.

Turning to the second element, Plaintiff sufficiently alleges individual coverage under the FLSA. To be eligible for FLSA claims, "an employee must first demonstrate that he is 'covered' by the FLSA." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011). Two types of FLSA coverage exist: individual and enterprise. *Id*. (citing *e.g., Ares v. Manuel Diaz Farms, Inc.,* 318 F.3d 1054, 1056 (11th Cir. 2003) (citing 29 U.S.C. § 207(a)(1)). Because Plaintiff asserts she was engaged in interstate commerce, the Court focuses its analysis on individual coverage. *See* ECF No. [28] at 6. "An employee is subject to individual coverage if he is *directly* and *regularly* 'engaged in' interstate commerce." *Id*. (emphasis in original) (quoting *Thorne v. All Restoration Servs., Inc.,* 448 F.3d 1264, 1266 (11th Cir. 2006)). "[F]or an employee to be 'engaged in commerce' under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by . . . regularly using the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Id*. at 1315-16 (quoting *Thorne*, 448 F.3d at 1266).

Plaintiff asserts she engaged in interstate commerce because she was a domestic services employee. *See* ECF No. [28] at 7. The definition of domestic service employment is "services of a household nature performed by an employee in or about a private home (permanent or temporary)" and "[t]he term includes services performed by employees such as companions, babysitters, cooks, waiters, butlers, valets, maids, housekeepers, nannies, nurses, janitors, laundresses, caretakers, handymen, gardeners, home health aides, personal care aides, and chauffeurs of automobiles for family use." *See* 29 C.F.R. § 552.3 (explaining "[t]his listing is

13

illustrative and not exhaustive."); *see also Chavez v. Arancedo*, No. 17-CV-20003, 2018 WL 4610564, *6 (S.D. Fla. Sept. 24, 2018) (finding the plaintiff established individual coverage under the FLSA when her job responsibilities demonstrated she was a domestic services employee). Plaintiff sufficiently alleges facts supporting this definition.  For example, Plaintiff was hired to care for Defendants' children in their home, Defendants arranged for Plaintiff's travel to the U.S., and required her to work in their home as a condition for Plaintiff obtaining a B-1 visa.  *See* ECF No. [1] at ¶¶ 33, 34, 36, 38.  Besides childcare, her tasks included meal preparation, house cleaning, and home organization. *See id*. at ¶40.  Defendants enjoyed a month-long vacation in Europe and left their children in Plaintiff's care during this time. *See id*. at ¶66.  With these allegations, the Court concludes that the Amended Complaint sufficiently pleads FLSA coverage in that Plaintiff alleges facts to support her status as a domestic services employee.  Defendants' attempts to demonstrate Plaintiff is exempt from FLSA and FMWA coverage fail because domestic services workers are included as FLSA nonexempt employees under the statute. *See Ramirez v. Martinez*, No. 08-CV-21863, 2009 WL 199786, *1-2 (S.D. Fla. Jan. 23, 2009) (citing 29 U.S.C. § 206(f) and finding that complaint sufficiently alleged the plaintiff qualified as a domestic service employee under the FLSA by alleging "duties of 'house cleaning and taking care of the Defendant's elderly parents," noting that the definition of domestic service employee includes a housekeeper).  Having sufficiently alleged FLSA coverage, she also satisfies the interstate nexus of the FMWA.  *See Wells*, 2017 WL 3088115 at *1*; Chuy*, 2010 WL 1854120 at *2.

Moving on to the last element, Plaintiff has sufficiently alleged that she worked hours with Defendants for which they did not pay her the required minimum wage under Federal as well as Florida law. *See id*. at ¶¶4, 7, 58, 97, 98, 103, 108, 110-12, 117.  Defendants do not dispute that Plaintiff sufficiently alleges this element, and the Court need not belabor the point.

Finally, Plaintiff has sufficiently alleged that she satisfied the FMWA's notice requirement as set forth in Fla. Stat. §§ 448.110(6)(a)-(b). *See* ECF No. [1] at ¶¶120-22. Plaintiff attached Exhibit B, a pre-suit demand letter putting Defendants on notice of Plaintiff's intent to pursue, *inter alia*, claims against them. *See* ECF No. [1-2]. In the letter, she claims entitlement to Florida minimum wages of $10, $12, and $13 per hour in 2022, 2023, and 2024, respectively; explains the time period in question is October 11, 2022 through May 31, 2024; states that Defendants owe her $75,225 in unpaid wages; and gives Defendants fifteen days from receipt of the letter to resolve Plaintiff's claim. *Id.* Defendants do not dispute that the notice requirements under Fla. Stat. §§ 448.110(6)(a)-(b) are satisfied and indeed admit this by their default.

Having met all three elements of an unpaid wages claim under both the FLSA (Count IV) and FMWA (Count V), Plaintiff has stated a claim to relief that is plausible on its face. *See Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (stating that "a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact."); *Iqbal*, 556 U.S. at 678; *Surtain*, 789 F.3d at 1245; *Chudasama*, 123 F.3d at 1370 n.41. As a result, Plaintiff is entitled to final default judgment on Counts IV and V. *See Chanel, Inc.*, 362 F. Supp. 3d at 1259; *Surtain*, 789 F.3d at 1245. Accordingly, I **RECOMMEND** that final default judgment as to **Count IV** and **Count V** be **GRANTED** in favor of Plaintiff and against Defendants.

### B.    Damages

After determining that Plaintiff's well-pled allegations have established Defendants' liability under both the FLSA and FMWA, the Court must next determine "the amount and character of damages to be awarded." *See Pastrana v. Level Up Fitness, LLC*, No. 21-CV-21985, 2021 WL 5631776, *3 (S.D. Fla. Dec. 1, 2021) (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)). "Damages may be awarded on default without an

evidentiary hearing if the record adequately reflects the basis for the award via 'a demonstration by detailed affidavits establishing the necessary facts.'" *See id.* (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985); *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also SEC v. Smyth*, 420 F.3d 1225, 1231–32 (11th Cir. 2005). "In other words, a court may award damages 'as long as the record contains evidence allowing the court to ascertain damages from mathematical calculations and detailed affidavits.'" *Id.* (quoting *Holtz v. Bagel Mkt., Inc.*, No. 12-CV-62040, 2013 WL 12141515, at *2 (S.D. Fla. Apr. 29, 2013); *Adolph Coors*, 777 F.2d at 1543–44)) (internal quotations omitted).

### 1.  Unpaid Minimum Wage and Liquidated Damages Under the FLSA

The Complaint, Plaintiff's Declaration, ECF No. [28-1], and the Declaration of Walter J. Tache in Support of Motion for Default Judgment ("Tache Declaration"), ECF No. [28-2], sufficiently supply the information needed to reduce the FLSA damages to reliable figures.  Both the allegations in the Complaint — allegations that Defendants admitted by their default — and Plaintiff's Declaration indicate that she worked for Defendants from approximately October 11, 2022 through May 31, 2024 at an average of about 90 hours weekly.[4]  *See* ECF No. [1] at ¶¶36, 41, 54-56, 69, 99-101; ECF No. [28-1] at ¶¶4-10.  These documents sufficiently provide that Defendants paid her approximately $13,290 for the 7,380 hours she worked.  *See* ECF No. [1] at ¶¶57, 102; ECF No. [28-1] at ¶10.  The federal minimum wage is $7.25 per hour.  29 U.S.C. § 206(a)(1)(C).  Applying the federal minimum wage rate to the hours Plaintiff worked totals $53,505 (7,380 X 7.25 = 53,505).  Of this amount, Defendants have paid $13,290.  Accordingly, Plaintiff's unpaid wages under the FLSA total $40,215 (53,505 – 13,290 = 40,215).

Defendants' objections to Plaintiff's counsel providing the mathematical computations in

---

[4] While the relevant time period is about 85.3 weeks, Plaintiff indicates that she seeks damages for 82 of those weeks or 7,380 hours.  *See* ECF No. [28-1] at ¶¶8-9; *see also* ECF No. [32] at 9.

the Tache Declaration are unavailing.  *See* ECF No. [29] at 18.  Plaintiff's sworn declaration and the factual allegations of the Complaint provide the facts required to perform the damages calculation.  Her counsel simply crunched the numbers, which the Court finds to be correct. Further, Defendants cite to *Nguyen v. Kabashi* to support their proposition that "[i]n similar situations, Courts have held evidentiary hearings." *See id*. at 18 (citing *Nguyen v. Kabashi*, No. 23-CV-61057-KMM, 2025 WL 2427718 (S.D. Fla. July 15, 2025), *report and recommendation adopted*, No. 23-CV-61057-KMM, 2025 WL 2427648 (S.D. Fla. Aug. 4, 2025)).  What Defendants fail to appreciate is that in *Nguyen*, the plaintiffs' declarations indicated that the "[n]umbers are average, estimates, and/or approximates. Numbers may change as information is uncovered through the discovery process." *See Nguyen*, 2025 WL 2427718 at * 3 (internal quotations and citations omitted).  Contrarily, Plaintiff asserts that the record contains sufficient information to determine the damages award without an evidentiary hearing and provides reliable figures that are subject to a precise mathematical computation — a computation that the Court has itself verified by crunching the numbers.  *See* ECF No. [28]; ECF No. [32] at 8-9.

Plaintiff is also entitled to liquidated damages in an amount equal to the total above as Defendants admitted that their violation of the FLSA was willful by virtue of their default and consequent admission of the well-pled allegations in the Complaint.  *See* 29 U.S.C. § 216(b).  Once a violation is established, and willfulness is found, liquidated damages are generally required.  *See Morgan*, 551 F.3d at 1282 (explaining that a jury's finding that the employer acted willfully precludes the court from concluding that the employer acted in good faith when it decides the liquidated damages question.).  On this record, Defendant's default operates as an admission that any FLSA violations were willful, and Plaintiff is, therefore, entitled to liquidated damages on $40,215, the unpaid FLSA wages.  *See Pastrana*, 2021 WL 5631776 at *3.

**2.** <u>**Unpaid Minimum Wage and Liquidated Damages under the FMWA**</u>

Similarly, the Complaint, Plaintiff's Declaration, and the Tache Declaration sufficiently supply the information needed to reduce the FMWA damages to reliable figures.  Both the Complaint and Plaintiff's Declaration allege that she worked for Defendants from approximately October 11, 2022 through May 31, 2024 at an average of about 90 hours weekly.  *See* ECF No. [1] at ¶¶36, 41, 54-56, 69, 113-15; ECF No. [28-1] at ¶¶4-10.  These documents sufficiently provide that Defendants paid her approximately $13,290 for the 7,380 hours she worked.  *See* ECF No. [1] at ¶¶57, 116; ECF No. [28-1] at ¶10.  Florida's minimum wage was, per hour, $11 in 2022, $12 in 2023, and $13 in 2024.  *See* Fla. Dep't of Com. Off. Of Workforce Servs., *Florida Minimum Wage History 2000-2024* (2024), https://www.floridajobs.org/docs/default-source/business-growth-and-partnerships/for-employers/posters-and-required-notices/2024-minimum-wage/2000-2024-florida-minimum-wage-history.pdf?sfvrsn=45f21b0_1 (last visited May 7, 2026).

Applying the Florida minimum wage rate first to the hours Plaintiff worked between October 11, 2022 through September 29, 2023, totals $47,025 (90 hours X 47.5 weeks X $11 = 47,025).  Applying the Florida minimum wage rate to the hours Plaintiff worked between September 30, 2023 through May 31, 2024 totals $37,260 (90 hours X 34.5 weeks X 12 = 37,260).  Thus, Plaintiff's minimum wages under the FMWA for the relevant time period total $84,285 (47,025 + 37,260 = 84,285).  Of this amount, Defendants have paid $13,290.  *See* ECF No. [1] at ¶116; ECF No. [28-1] at ¶10.  As a result, Plaintiff's unpaid wages under the FMWA total $70,995 (84,285 – 13,290 = 70,995).  And, for the same reasons that Plaintiff is entitled to an equal sum in liquidated damages under the FLSA, Plaintiff is likewise entitled to an equal sum in liquidated damages under the FMWA, which is $70,995.  *See* Fla. Stat. § 448.110(6)(c)(1) ("Upon prevailing in an action brought pursuant to this section, aggrieved persons shall recover the full amount of

any unpaid back wages unlawfully withheld plus the same amount as liquidated damages . . .").

With that said, Plaintiff is not entitled to a double recovery — that is, to recover past due minimum wages under both the FLSA and the FMWA.  And Plaintiff recognizes as much in the Amended Motion for Default Judgment.  Indeed, Plaintiff states that she "will elect the remedy that yields the highest monetary recovery, as she is not entitled to a double recovery."  *See* ECF No. [28] at 4.  As Plaintiff's damages under the FMWA yield the greatest monetary recovery, Plaintiff has elected to be awarded damages exclusively under the FMWA.  Accordingly, Plaintiff will only be entitled to an award of unpaid minimum wages under the FMWA in the amount of $70,995.00 plus $70,9995.00 in liquidated damages, for a total of $141,990.00.

### C.  Attorney's Fees and Costs

Plaintiff concedes that her request for attorney's fees and taxable costs is premature at this juncture under Local Rule 7.3(b), but requests that the Court find she is entitled to both.  *See* ECF No. [32] at 10.  Under the FLSA, a court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action," in addition to any judgment a plaintiff is awarded.  *See* 29 U.S.C. § 216(b).  Similarly, the FMWA act also requires that a prevailing plaintiff be awarded reasonable attorney's fees and costs.  *See* Fla. Stat. § 448.110(6)(c)(1).  As explained above, Plaintiff has stated a claim to relief that is plausible on its face under both the FLSA (Count IV) and FMWA (Count V).  Accordingly, I **RECOMMEND** that Plaintiff be entitled to reasonable attorney's fees and costs under both the FLSA and FMWA and that Plaintiff be given an opportunity to file a Motion for Attorney's Fees under Local Rule 7.3 after the entry of an Order granting Final Default Judgment.

### IV.   CONCLUSION

For the reasons explained above, I respectfully **RECOMMEND** that Plaintiff's Amended

CASE NO. 24-CV-23316-MOORE/Elfenbein

Motion for Default Judgment, **ECF No. [28]**, be **GRANTED** as follows:

1.      A Final Default Judgment **BE ENTERED** as to Counts IV and V in favor of Plaintiff and against Defendants;

2.      As Plaintiff has elected her remedy under the FMWA, Plaintiff **BE AWARDED $141,990.00** in damages, which breaks down as $70,995.00 in unpaid minimum wages and $70,995 in liquidated damages.

3.      Plaintiff be entitled to an award of reasonable attorney's fees and costs and that Plaintiff be given an opportunity to file a motion for attorney's fees and costs under Local Rule 7.3 following the entry of an Order of Final Default Judgment; and

4.      Defendants be required to complete Florida Civil Procedure Form 1.977 Fact Information sheet, along with all attachments, within forty-five (45) days of entry of an Order of Final Default Judgment.

Pursuant to Local Magistrate Rule 4(b), the parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

CASE NO. 24-CV-23316-MOORE/Elfenbein

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on May 13, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record

21